***********
The Full Commission reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Stephenson and the briefs and oral arguments before the Full Commission. The appealing party has shown good ground to reconsider the evidence in this matter. Having reconsidered the evidence, the Full Commission reverses the Deputy Commissioner's denial of benefits and enters the following Opinion and Award.
 ***********
The Full Commission finds as facts and concludes as matters of law the following, which were entered into by the parties at the hearing and following in a Pre-Trial Agreement, admitted into evidence as Stipulated Exhibit #1:
1. All parties are properly before the North Carolina Industrial Commission and are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. On May 10, 2000, an employment relationship existed between the plaintiff and defendant.
3. On May 10, 2000, the defendant was self insured and Cambridge Integrated Services Group was its third party administrator.
4. Plaintiff's average weekly wage was $340.00, yielding a compensation rate of $226.67. (Inasmuch as the parties have stipulated plaintiff's average weekly wage, plaintiff's motion to require defendant to file a Form 22 is now moot.)
5. Plaintiff's medical records regarding this claim are admitted into evidence as Stipulated Exhibit #2 and include the following providers:
a. Carolina Orthopaedic Specialists
b. Grace Hospital, Emergency Department visit of 7 August 2000
c. Dr. Samuel J. Chewning
d. Carolina Health Care System
e. Southeast Pain Center
f. Iredell Memorial Hospital
g. Dr. David Kelley
6. Industrial Commission Forms 18, 19, 33, and 33R were admitted into evidence at hearing.
7. Plaintiff's Responses to defendants' Interrogatories and Request for Production of Documents are admitted into evidence as Stipulated Exhibit #4.
8. The depositions of Dr. Samuel J. Chewning, completed on May 13, 2002, and June 24, 2002, are admitted into evidence.
9. The issues to be determined are whether the plaintiff sustained a compensable injury by accident in May of 2000; and, if so, to what, if any, benefits is he entitled.
 RULINGS ON EVIDENTIARY MATTERS
The objections contained within the depositions of Dr. Samuel J. Chewning, which were completed on May 13, 2002, and June 24, 2002, are ruled upon in accordance with the applicable provisions of law and the Opinion and Award in this case.
 ***********
Based upon all the competent evidence of record and the reasonable inferences flowing therefrom, the Full Commission makes the following additional:
 FINDINGS OF FACT
1. In May of 2000, plaintiff was 47 years old and was employed in K-Mart's garden department. This job involved the retail sales of garden items to customers. He had been so employed for approximately one month, after being briefly employed by another employer and prior to that being unemployed for approximately 20 years.
2. Plaintiff completed the ninth grade and later earned a GED.
3. As part of plaintiff's job duties, he was required to lift bags of peat moss. These bags weighed approximately 40 pounds each.
4. In the early part of May 2000, plaintiff was working alone in the garden shop when he attempted to load two bags of peat moss into a customer's car. After loading one bag of peat moss, plaintiff was attempting to lift a second bag when he felt an immediate onset of back pain. As a result, plaintiff dropped the bag of peat moss that he was holding.
5. Plaintiff reported his injury to supervisor Larissa LaFrancis. Ms. LaFrancis testified at hearing that she did not recall plaintiff reporting the injury to her, but she was present during a meeting on August 1 in which the injury was discussed and she admitted having known about the injury since the spring of that year.
6. Plaintiff's Exhibit #1 is dated August 1, 2000, and indicates that plaintiff was placed on a 30-day probation due to absenteeism and noted that plaintiff did not wish to "fill out an accident report for his back." Plaintiff testified that he did not want to file an accident report because he was afraid he would lose his job.
7. Plaintiff worked sporadically throughout the spring and summer of 2000 as his pain would allow. Plaintiff did not formally pursue a workers' compensation claim prior to 2001 because he hoped his condition would improve and because he desired to continue working for K-Mart and feared that filing a claim would jeopardize his employment.
8. Plaintiff presented for medical treatment at Carolina Orthopaedic Specialists on May 20, 2000. During this examination plaintiff noted that he had injured his back two weeks prior while lifting a bag of peat moss at K-Mart.
9. Prior to this injury plaintiff had treated with Dr. Samuel J. Chewning. In 1991 Dr. Chewning performed a lumbar laminectomy. In 1998, Dr. Chewning performed a cervical diskectomy fusion. By note of July 21, 1998, Dr. Chewning instructed plaintiff that he could return to work so long as he avoided heavy lifting. Dr. Chewing did not indicate a specific pound limit for lifting, but instructed plaintiff in proper biomechanics regarding how to lift given amounts of weight.
10. On August 8, 2000, plaintiff again came under the care of Dr. Chewning. Dr. Chewning's note of August 8, 2000, states:
 Actually James had done very well. He's gone back to work, something he hadn't done in twenty years and says he is actually enjoying it. He is working at K-Mart in the garden department. About 2 and 1/2 months ago he had a twisting injury and he pulled something in his back.
Ultimately, Dr. Chewning decided to perform surgery on plaintiff. On September 13, 2000 Dr. Chewning performed a decompression at L2-3 bilateral, removal of old hardware at L3-4, fusion of L3-4, instrumentation of L3-4 and local bone graft and allograft. This procedure was necessary to provide relief.
11. Plaintiff last worked for K-Mart on August 27, 2000.
12. In his deposition of May 13, 2002, Dr. Chewning testified:
 Q. (By Mr. Helton) Dr. Chewning, I'm going to read something into the record. You understand in workers' compensation cases there has already been a trial and lay people have already testified. And very briefly I am going to read something in and ask you to comment on it.
 I asked Mr. Goforth this question during the trial. All right. Tell your Honor what happened the day of your injury.
 His answer was, I was in the garden shop by myself. Ralph had been out there previously, Ralph Houser, the guy that just left. He had been out there previously, and we walked over in the store. And like he said, he was over the store too. And I was left alone in the garden shop. And a lady come in and bought some peat moss. She bought two bags. I loaded one bag, and I went back to load the other one. When I started to stand up, I twisted and took a step before I got straightened up. And I dropped the peat moss on the ground. And I turned back around, and I picked it up, got it to my chest, straightened up and threw it in the car. That was it.
 There was testimony that the peat moss weighed in excess of 40 pounds, Dr. Chewning. Mr. Goforth also testified that, other than that lifting incident in May of 2000, he had no trauma from any automobile wreck or other lifting incident of any sort between the date that you performed the surgery in 2000 and when you last saw him.
 So assuming that the only trauma that Mr. Goforth experienced was in early May, approximately May 10, 2000, when he lifted a bag of peat moss while working at K-Mart, what relationship, if any, would that lifting incident have to the surgery you last performed on Mr. Goforth?
 A. As Mr. Goforth had documented, he was doing well and was back at work. He has had multiple previous spinal operations, which put his back at somewhat more of an at-risk situation, but he seemed to be functioning and doing well.
 There definitely appears to be a temporal relationship to the lifting injury and the onset of his symptoms. And I would say I believe that the surgery that we ended up performing on —
 Q. I think that was September 13, 2000, Doctor, if that helps.
 A. — September 13, 2000, was directly related to his on-the-job injury on or about May of 2000.
 Q. And do you hold that opinion to a reasonable degree of medical certainty —
A. Yes, sir, I do.
Q. — and to your own satisfaction?
A. Yes, sir, I do.
Dr. Chewning testified also:
 Q. Okay. Doctor, next I'm going to turn your attention to a document that is dated November 8, 2000. And it is a letter regarding James Goforth, addressed To Whom It May Concern. I just ask you to review it a moment. And if you could, read the first sentence for purposes of identification.
 A. It's a note when I was still at the Miller Orthopaedic Clinic on Miller Orthopaedic letterhead on November 8, 2000, reference to James Goforth, To Whom It May Concern. James Goforth has been a patient of mine since 1986 and has undergone multiple spine surgeries over the past 14 years.
 Q. And, Doctor, you expressed an opinion in there regarding Mr. Goforth's ability to work; is that correct?
A. Yes.
Q. That was your opinion on November 8, 2000?
 A. This letter is to verify that he should be considered disabled from working as of 8-24-00.
13. The greater weight of the evidence established that plaintiff injured his back in the early part of May of 2000 lifting a bag of peat moss while working in the course and scope of his employment with K-Mart. Plaintiff had a long history of spinal surgeries, but the injury of early May 2000 is the event that has produced his current period of disability. His back injury, which occurred at a judicially cognizable period of time, was a compensable specific traumatic incident of the work assigned.
14. Plaintiff's Exhibit No. 2 is the note of Dr. Myron W. Smith III of May 22, 2000. This is a stipulated record and states, in pertinent part:
 Mr. Goforth is here with complaints of back pain for the past 2 weeks. He states that he works at K-Mart and was lifting a bag of peat moss and felt some pain in his back. He has not reported it as workers comp since he wanted to try and keep working.
This note is critical because (1) it corroborates the date of injury; (2) it corroborates the mechanism of injury; and (3) it corroborates Mr. Goforth's reason for not aggressively pursuing the matter until he retained counsel in January 2001.
15. As result of plaintiff's compensable work-related injury, he has been unable to earn wages in any occupation since August 27, 2000.
16. The uncontroverted medical evidence in this case establishes that plaintiff is permanently and totally disabled as a result of the injury he suffered working at K-Mart in early May 2000.
17. Defendant's contention and supporting evidence that plaintiff was not credible because his Form 18 stated that the injury occurred "approx. May 10, 2000," and defendant's records showed that plaintiff did not work on May 10, 2000, is without merit. The greater weight of the evidence showed that the injury occurred sometime around May 10. "Approximately May 10" is a judicially cognizable period of time.
18. Defendant's contention and supporting evidence that plaintiff's back condition following the peat moss bag incident of early May 2000 was a natural progression of an earlier workers' compensation injury is also without merit. The greater weight of the evidence showed that plaintiff's prior back condition had stabilized and that his new injury was at a different location than his previous injury.
19. Defendant has defended this matter without reasonable cause. At the conclusion of the hearing of this claim before the Deputy Commissioner, plaintiff's counsel of record gave notice that sanctions would be requested. Nevertheless, defendant proceeded to further delay the administration of justice in this claim by forcing the deposition of Dr. Chewning not once, but twice. The gravamen of defendant's position was that because Mr. Goforth had a history of multiple back surgeries, he was negligent in taking work in K-Mart's garden department. What the record discloses is that while Mr. Goforth had eight cervical and lumbar spinal surgeries prior to the injury of May 10, 2000, his last surgery had been over two years prior to the date of injury. He had not undergone a lumbar surgery since 1991. Further, the record establishes that Dr. Chewning had advised Mr. Goforth that he could attempt a return to work. In an attempt to remove himself from the rolls of Social Security disability, Mr. Goforth came to work for K-Mart. Never did he fail to disclose his medical history. Mr. Goforth's efforts should be applauded, not derided.
20. Lyndon R. Helton, Attorney, Hickory, NC, plaintiff's counsel of record, was unable to argue this case before the Full Commission due to a conflict in Superior Court. Sam Scudder, Attorney, Raleigh, NC, appeared before the Full Commission in his stead. The Full Commission finds that Mr. Scudder deserves a reasonable fee of $750.00 for his services to plaintiff.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission reaches the following additional:
 CONCLUSIONS OF LAW
1. Sometime around May 10, 2000, plaintiff sustained a compensable injury to his back arising out of and in the course and scope of his employment with defendant-employer by way of a specific traumatic incident of the work assigned. N.C. Gen. Stat. § 97-2(6).
2. As a result of plaintiff's compensable injury, plaintiff is entitled to receive ongoing weekly benefits from August 27, 2000, at the compensation rate of $226.67 per week and continuing until further order of the Commission. N.C. Gen. Stat. § 97-29.
3. Plaintiff is entitled to have defendant provide all medical treatment arising out of plaintiff's compensable injury to the extent it tends to affect a cure, give relief or lessen plaintiff's period of disability. This will include all care directed by Dr. Samuel J. Chewning. N.C. Gen. Stat. § 97-25.
4. Defendant has defended this claim without a good faith basis for doing so. This defense constitutes unreasonable defense of this claim and defendant shall pay plaintiff's attorney's fees, which shall be taxed as costs. N.C. Gen. Stat. § 97-88.1.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendant shall pay the plaintiff ongoing weekly benefits at the compensation rate of $226.67 per week from August 27, 2000, and continuing until further order of the Commission. Those amounts which have accrued to date shall be payable in a lump sum immediately after receipt of this Opinion and Award. Defendant shall pay interest at 8 per cent (8%) per year from the date of the hearing before the Deputy Commissioner.
2. A reasonable attorney's fee measured as 25% of the compensation due plaintiff in paragraph 1 of this Award is hereby approved for plaintiff's counsel, which shall be in addition to all compensation due plaintiff. Defendant shall pay a sum measured as 25% of the lump sum due plaintiff in paragraph 1 above directly to plaintiff's counsel at the same time defendant pays 100% of the lump sum to plaintiff. After payment of the lump sum attorney's fee, defendant shall thereafter pay directly to plaintiff's counsel weekly payments of $56.67 so long as weekly payments of $226.67 are payable to plaintiff. All such attorney's fees are taxed as costs pursuant to N.C. Gen. Stat. § 97-88.1.
3. All attorney's fees which are due to be paid to plaintiff's counsel shall be paid by defendant in addition to the weekly benefits which shall be paid to plaintiff.
4. Defendants shall pay all medical expenses incurred by plaintiff as result of his compensable injury of May 10, 2000, when bills for the same have been submitted to the Industrial Commission pursuant to approved Industrial Commission procedures.
5. Immediately after receipt of his lump sum attorney fee heretofore ordered, Lyndon Helton shall pay $750.00 to Sam Scudder as Mr. Scudder's reasonable attorney fee for handling plaintiff's case before the Full Commission.
6. Defendants shall pay all costs
This 16th day of June 2003.
 S/_____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
 S/____________ BUCK LATTIMORE CHAIRMAN
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER